24. On or before June 25, 2015, IMP contracted with [Conder] to provide employees to perform work at RFK and provide necessary vetting, training, instruction, supervision, and oversight of *203 its employees on the date of the incident.
25. Due to its prior contract with IMP, Mountain was an intended beneficiary of IMP's contract with [Conder].
Mountain Compl. ¶¶ 23-25.
These allegations are not sufficient to establish that Mountain was a third-party beneficiary. "[I]t is well established that, in order to be deemed a third-party beneficiary of a contract, a plaintiff must demonstrate that the parties to the contract 'intended to create and did create enforceable contract rights in the third party.' " FiberLight, LLC v. Nat'l R.R. Passenger Corp. , 81 F.Supp.3d 93, 109 (D.D.C. 2015) (quoting Sealift Bulkers, Inc. v. Republic of Armenia , No. 95-1293(PLF), 1996 WL 901091, at *4 (D.D.C. Nov. 22, 1996) ); see also Restatement (Second) of Contracts § 302 (1981). A purported third-party beneficiary must "plead facts showing that [it] is the intended beneficiary of the contract at issue." Whiting v. AARP , 701 F.Supp.2d 21, 27 n.5 (D.D.C. 2010), aff'd, 637 F.3d 355 (D.C. Cir. 2011) (citing Sidibe v. Traveler's Ins. Co., 468 F.Supp.2d 97, 100-01 (D.D.C.2006) ).
There are no facts in Mountain's bare-bones third-party complaint from which the Court could plausibly infer that Conder and IMP intended Mountain to be a third-party beneficiary of their contract. Mountain notes that it entered into an agreement with IMP around the same time that IMP entered into an agreement with Conder, but this fact alone cannot support a plausible inference that Mountain was an intended beneficiary of the latter agreement.
In sum, IMP's third-party claims can go forward on the basis of an express indemnification agreement. Mountain's may not.
C. Implied Indemnity
Finally, both Third-Party Defendants also attempt to avoid the exclusivity of the WCA by alleging an implied duty to indemnify. As explained in Myco , such claims are actionable if the third party can establish that the employer's alleged implied obligation to indemnify "arise[s] out of a specific duty of defined nature-separate from the injury to the employee-owed to the third party by the employer." Myco , 565 A.2d at 299. In such a case, "the indemnity is based on a special legal relationship existing separate and apart from any liability which the employer might have had to the injured employee." Id. at 299-300.
1. IMP
IMP has plausibly alleged the type of relationship that could support a claim for implied indemnity. IMP and Conder allegedly have had a long-standing business relationship, pursuant to which IMP relies on Conder to handle personnel-related matters. Specifically, IMP has alleged that in addition to the business arrangement at issue in this case, it "had an ongoing relationship with [Conder] in which IMP entered into similar prior agreements with [Conder] pursuant to which [Conder] agreed to provide its employees and/or agents to build concert stages, and to provide the necessary vetting training, instruction, supervision, oversight and safety protection of these employees and/or agents." IMP Compl. ¶ 17. IMP alleges that it "reasonably relied upon [Conder's] industry knowledge and experience in vetting, training, staffing, supervising and overseeing" the work of its agents. Id. ¶ 18. IMP alleges that the parties' "long-standing relationship ... created a specific duty by [Conder] to provide competent, well-trained and safety aware employees and/or agents with necessary equipment in conformance to applicable industry standards to build a concert stage." Id. ¶ 32. Finally, IMP also alleges that Conder had included IMP as an additional *204 insured on its insurance liability policy. Id. ¶ 15. Accepting these allegations as true and drawing all reasonable factual inferences for IMP, the relationship between IMP and Conder could plausibly support a claim that Conder had a distinct implied duty to indemnify IMP that would not be barred by the exclusivity of the WCA. See Howard Univ. v. Good Food Servs., Inc. , 608 A.2d 116, 118-24 (D.C. 1992) (holding that food services company that contracted with university to provide meals and "had day-to-day responsibilities such as keeping the kitchen facilities clean, supervising [its] employees in the kitchens, and implementing University food service policies," owed the university independent duties that could give rise to a claim for implied indemnity despite the exclusivity of the WCA because "[u]nlike the situation in Myco , which involved a one-time sale of equipment with follow-up service, the [food services company and the university] had an ongoing and comprehensive contractual relationship involving day-to-day interaction and decisionmaking.").
2. Mountain
Mountain's claim for implied indemnity, on the other hand, is not supported by sufficient factual allegations. Mountain's third-party complaint merely alleges that "[d]ue to the day-to-day interaction and decisionmaking between Mountain and [Conder] from on or about June 28 through July 7, 2015, a special relationship existed between the parties." Mountain Compl. ¶ 30. As far as the Court can tell from Mountain's complaint, the extent of the relationship between Mountain and Conder was that they both contracted with IMP to help erect a stage for a particular concert, and then both worked toward that joint goal for a little over a week. Mountain's third-party complaint does not allege any "ongoing and comprehensive contractual relationship," Howard Univ. , 608 A.2d at 124, like the relationship that allegedly existed between IMP and Conder. The facts in Mountain's complaint are instead more akin to the "one-time sale of equipment with follow-up service," id. , at issue in Myco . Even accepted as true, Mountain's allegations do not plausibly establish the type of relationship that could support a claim for implied indemnity under Myco . See In re Fort Totten Metrorail Cases Arising Out of the Events of June 22, 2009 , 808 F.Supp.2d 154, 163 (D.D.C. 2011) (dismissing indemnification claim on the basis of the exclusivity of the WCA "because the relationship between [the parties] is analogous to the facts in Myco ."). The Court agrees with Conder that allowing Mountain's claim to go forward based on the minimal allegations in its third-party complaint would effectively "eviscerate the exclusivity of Worker's Compensation." Mountain Reply at 5.
In sum, the Court finds that IMP has plausibly pled an implied indemnification claim that could survive the exclusivity of the WCA, but Mountain has not done so.
IV. CONCLUSION
For the foregoing reasons, the Court will GRANT Conder's motion to dismiss Mountain's third-party complaint, but DENY Conder's motion to dismiss IMP's third-party complaint. The Court finds that IMP has plausibly pled the existence of an express indemnification agreement and sufficient facts to support an implied indemnification theory as well. Mountain has not adequately pled either an express or implied indemnification claim. The dismissal of Mountain's third-party complaint, however, will be WITHOUT PREJUDICE. If Mountain can in good faith add factual allegations to its third-party complaint that would show that it was an intended beneficiary of IMP's contract with Conder, or that its relationship with Conder was sufficient to establish a claim *205 for implied indemnity, it may seek leave to file an amended complaint. See Attias v. Carefirst, Inc. , 865 F.3d 620, 625 (D.C. Cir. 2017) (holding that an express invitation to amend the complaint renders an order of dismissal without prejudice not final and appealable because it "signal[s] that the district court is rejecting only the complaint presented, and that it intends the action to continue.") (emphasis in original). An appropriate Order accompanies this Memorandum Opinion.